IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2007

**VINCENT HOWARD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 99-04351     Chris Craft, Judge**

_____

**No. W2007-00322-CCA-R3-PC  - Filed May 6, 2008**

_____

The petitioner, Vincent Howard, was convicted by a Shelby County Criminal Court jury of first degree felony murder and especially aggravated robbery and received consecutive sentences of life without the possibility of parole and twenty-one years. He seeks post-conviction relief on grounds that he received the ineffective assistance of counsel. The trial court denied relief, and we affirm that judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Gerald S. Green, Memphis, Tennessee (on appeal), and Ross Sampson, Memphis, Tennessee (at trial), for the appellant, Vincent Howard.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Douglas Gregory Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner's convictions resulted from his involvement in the robbery of Zeke's Lounge in Memphis and the shooting death of Zeke's Lounge employee Richard McRoberts. According to testimony presented at the petitioner's trial, the petitioner and his co-defendant, Tavarsity Childers, were arrested after officers received Crime Stoppers tips. Childers gave a statement naming the petitioner as his accomplice in the robbery, and the petitioner also gave a statement admitting his involvement in the robbery and saying that both he and Childers fired their weapons during the robbery. See State v. Vincent Howard, No. W2001-01904-CCA-R3-CD, Shelby County (Tenn. Crim. App. Apr. 11, 2003).

At the post-conviction hearing, the petitioner's trial counsel testified that he became lead counsel on the petitioner's case after the state decided not to seek the death penalty against the petitioner. He said that before he became lead counsel, the capital defense team had arranged a mental evaluation for the petitioner and that the petitioner's file contained documents stating that the petitioner was competent to stand trial and that an insanity defense could not be supported. He said the petitioner's file also included information about the petitioner's background and history. He said he could not recall whether records showed that the petitioner was involuntarily committed to a mental health facility at the age of ten, although he said he knew that the mental health evaluation performed on the petitioner was prompted by the petitioner's history of mental illness. Counsel said that he did not ask for an IQ test to be performed on the petitioner, that he thought evidence of the petitioner's IQ was included in the petitioner's file, and that he would not be surprised to know that the petitioner's IQ at the age of fourteen was below eighty.

Counsel testified that the state made a plea offer to the petitioner guaranteeing him a life sentence. He said that he discussed this offer with the petitioner and that the petitioner seemed to understand the offer. He said he did not think the offer was significant because a life sentence, carrying a minimum of fifty-two years, would not be substantially different from a sentence of life without the possibility of parole. Counsel stated that he visited the petitioner often in jail and counted twelve visits in addition to the times they met in court. He acknowledged that these twelve visits were spread out over the one and one-half years that he represented the petitioner in this case. Counsel said that he filed a motion to suppress the petitioner's statement to police but that the court denied it. He said he did not argue a motion to dismiss the case for lack of probable cause. He said he did not cross-examine the victim's wife during trial because she only testified in order to identify the victim. He recalled that an eyewitness, Jaclyn Dunlap, was not able to identify the petitioner because the petitioner was wearing a mask during the robbery. Counsel also remembered testimony from homicide Detective James Rayall that the petitioner exhibited odd behavior during interrogation, including writing on a wall and chewing a coke can. Counsel said that he did not file a motion to suppress evidence of the gun recovered in the case, although there was no definitive proof that the bullet that killed the victim came from that gun. He acknowledged that having the gun suppressed would have been beneficial to the petitioner's case. He did not remember whether the petitioner was arrested pursuant to an arrest warrant.

Counsel testified that he talked to the petitioner about his defense. He said that although the petitioner was sometimes difficult to understand due to mumbling and the petitioner's education level, he did not have problems communicating with the petitioner. He said that the defense focused on countering the charge of felony murder by proving that the shooting occurred after the robbery was completed. He acknowledged that the petitioner did not have a very good defense because the evidence showed that a robbery occurred and that someone was killed. He said the trial was made more difficult because the petitioner and his co-defendant both made statements implicating the petitioner in the crimes. Counsel said that, at the time of the trial, he did not see a legal basis for suppressing evidence of the gun, although he said he could have argued that it was the wrong gun based on the fact that investigators could not match the gun to the bullet found in the victim.

Counsel said he did not recall any defense witnesses testifying. He said that after the petitioner was convicted, a more detailed report on the petitioner's metal health was done.

The petitioner testified that he had been committed to a psychiatric hospital once and that he had various contacts with juvenile court as a minor. He said he did not remember what happened the night of the robbery. He said he was not taking medication at the time he was arrested and questioned by police, although he said he was probably under the influence of alcohol and marijuana at the time. He said he was arrested and handcuffed while at school and taken to the police station for questioning. He said he was questioned twice and did not cooperate the first time detectives tried to question him. Although he did not remember it, he was told that he wrote something on a board. He did remember tearing or chewing on a drink can. He said that before his second questioning, he was taken to the second floor of the jail, also called the medical floor, or the "butt naked tank." He said he was taken from the second floor for questioning a second time, during which detectives told him that his co-defendant had said he was the one who shot the victim. He said he did not remember his rights being read to him before he was questioned.

The petitioner testified that his trial counsel informed him of a plea offer the state made for a life sentence. He said he talked to counsel about whether the state would make an offer for a lesser offense. He said he did not talk to counsel about the possibility of suppressing the gun investigators found, although he did talk about suppressing his statement to police. He said that he asked counsel about an "insanity plea" and that counsel told him that was not an option. He said he was not sent to a mental hospital for an evaluation, but he did remember a psychologist or psychiatrist visiting him in jail and asking him questions. He said the meeting lasted forty-five minutes to an hour.

The petitioner testified that his trial counsel did not present any proof or argue issues at trial. He said counsel should have "searched deeper" into his case to look for errors, especially errors in regard to what he deemed was his "illegal arrest" and subsequent statement. He said he did not remember getting on the stand at trial but thought he told the court he did not want to testify. The petitioner's version of what happened the night of the offenses was that the victim grabbed his gun, causing his finger to hit the trigger. He said he should not have been charged with first degree murder.

On cross-examination, the petitioner testified that he was not prescribed medication at the time he was arrested or at the time of the post-conviction hearing. He acknowledged that he received discovery material, including police reports, from his trial counsel. He agreed with records stating that his two police interrogations were two days apart. He said he did not have access to drugs or alcohol the two days before his second questioning and the written statement he gave to police. He said he did not tell detectives that he shot the victim, although he did place himself at the scene of the crimes and admitted to having a gun. He said he made the choice not to testify, even though he knew he could have told the jury what happened before the victim was shot. He acknowledged that the only other eyewitnesses to the events were his co-defendant, who made a statement against him, and Ms. Dunlap, who testified for the state. He said that he did not tell trial counsel of any witnesses who could have testified in his defense and that he did not have any alibi witnesses.

The petitioner testified that he had a difficult time understanding "big words." He admitted that his statement was typed in his presence and that he signed and initialed the statement, although he said he was rushed to sign the statement and just wanted "to get it over with." He said counsel should have investigated the circumstances of the statement better. He said he did not remember if he had suicidal thoughts while being questioned, but he did remember "acting out" during the first questioning, which led to his being sent to the "butt naked tank," which he said was a suicide-watch tank. When asked how trial counsel could have been more effective, the petitioner stated, "Even though I didn't have nothing to bring forward, he could have argued something on my behalf." He said counsel could have made arguments about ballistic tests that did not conclusively prove his gun shot the victim and about the legality of his arrest. The petitioner said he thought his arrest was illegal because the police did not follow proper procedures. He said he was unsure of the legal basis by which ballistics tests could have been suppressed.

In a written order, the trial court denied the petition for post-conviction relief, finding that

> the petitioner has failed to show any deficient performance. In his testimony, he often made vague assertions that his attorney should have done something else, or should have investigated more thoroughly, but offered no proof as to what else could have been done. He stated he hoped the jury would find the gun went off by accident when the victim struck it with his arm after the robbery (which would still not be a defense to the felony murder count), but admitted that he had no witnesses other than the ones the state called, and elected not to testify on his own behalf. He also admitted to the robbery and firing the shot that killed the victim. He had been thoroughly examined for any competency and mental issues. His attorney, admitting on the stand that there was no real defense available to the petitioner, testified that he opted to argue to the jury that it was an accidental shooting and there was no intent to kill, and hoped to prevail on the felony murder charge by arguing that the accidental killing happened after the robbery had been completed. This court finds that the trial attorney was not ineffective, and did the best that he could for his client under the circumstances. He . . . attempted to suppress the petitioner's statement, attempted to get an offer other than life imprisonment for his client, attempted to interview all the witnesses, obtained all allowable discovery and police reports and did the best he could with the facts he was dealt. In the process, he obtained a hung jury as to [a] premeditated murder count, but as to the other counts was unable to overcome the voluntary, detailed confession of his client and the facts of the robbery. . . .

On appeal, the petitioner argues that the trial court erred in ruling that his trial counsel was effective because the trial court did not have sufficient evidence to rule. He further argues that the "paucity of proof" presented at the post-conviction hearing "revealed 1) no defense proof was put before the fact-finder and 2) during the voir dire of the Appellant prior to the defense's turn to put on proof, counsel failed to thoroughly detail to the court via questioning of the [petitioner] how, or by what process, the decision not to testify was formed[.]" The state contends that we should affirm the judgment of the trial court because the petitioner raises issues on appeal regarding counsel's effectiveness that were not raised in the post-conviction petition and because, at any rate, the petitioner failed to demonstrate that he received the ineffective assistance of counsel.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "Thus, the fact that a

particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

Regarding the petitioner's argument that the trial court erred in ruling that counsel was effective because it did not have sufficient proof to do so, we reiterate that it is the petitioner who bears the burden in a post-conviction proceeding to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). Thus, because the petitioner contends that his trial counsel was ineffective, it was the petitioner's responsibility to present proof at the post-conviction hearing that his counsel was ineffective. Contrary to the petitioner's position, the lack of sufficient evidence in this regard requires that the trial court rule against the petitioner and deny relief.

In this appeal, the petitioner raises two allegations regarding his trial counsel's ineffectiveness: (1) that counsel failed to present proof at trial, particularly regarding the voluntariness of his confession, and (2) that counsel failed to properly conduct a voir dire of the petitioner regarding petitioner's decision not to testify at trial. As the state points out, these specific grounds were not raised in the petitioner's post-conviction petition and were not argued at the post-conviction hearing. Regardless, the petitioner has not demonstrated that counsel was ineffective in either of these areas. The petitioner did not present evidence that his counsel should have presented that would have altered the outcome of his trial. The petitioner also did not present evidence that counsel failed to follow proper procedure regarding the petitioner's decision not to testify. In fact, the petitioner testified at the post-conviction hearing that he made the choice not to testify, knowing that there were not other eyewitnesses who could have testified in his defense. In sum, the petitioner's arguments that he is entitled to post-conviction relief are without merit. The trial court properly denied relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE